**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANGELO OLLIE,<br><br>                Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>                Defendant. | Civil Action No. 13-03297 (JLL)<br><br><br>**OPINION** |

**LINARES**, District Judge.

Before the Court is Plaintiff Angelo Ollie ("Plaintiff")'s appeal, seeking review of a final determination by Administrative Law Judge ("ALJ") Donna Krappa denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The Court declines Plaintiff's request for oral argument and, thus, resolves this matter on the parties' briefs pursuant to Local Civil Rule 9.1(f). For the reasons set forth below, the Court **AFFIRMS** the final decision of the Commissioner of Social Security.

## I.     BACKGROUND

Plaintiff was born on October 14, 1969, and has a high school education. (R. at 81, 282).[1] Plaintiff claims that he was disabled from August 2005 through July 2008, primarily because of his inability to concentrate for long periods of time due to his impairments. (*See id.* at 85-86, 300, 305). Prior to his alleged period of disability, Plaintiff had last worked as a delivery driver's assistant for AFI Foodservice in April 2001, unloading trucks at stores and restaurants.

---

[1] "R." refers to the pages of the Administrative Record.

(*See id.* at 84-85, 340).  Plaintiff quit working for AFI Foodservice after four months because he could not concentrate.  (*Id.* at 84, 340).  He most recently worked at a Wal-Mart from July 2008 until February 2009, stocking merchandise on the store's shelves overnight.  (*Id.* at 90-91, 340).  He suffers from (1) affective disorder (depression), (2) sleep apnea, and (3) obesity.  (*See id.* at 339, 377, 379-80).  A discussion of each of Plaintiff's impairments follows.

      A.     Plaintiff's Impairments

      1.     Affective Disorder (Depression)

Plaintiff has a history of depression—his treating psychiatrist, Dr. Saul Gorman of Trinitas Hospital, first prescribed him an antidepressant medication, Wellbutrin (Bupropion Hcl), in April 2001.  (*Id.* at 339).  Thereafter, Dr. Gorman continuously treated Plaintiff until at least November 2010, and the record is replete with Dr. Gorman's treatment notes.  (*See id.* at 393-94, 396, 417, 419-20, 516-18).

Dr. Gorman's January and April 2005 treatment notes describe Plaintiff's depression as "mild," with no suicidal ideations or psychosis, and state that his medication did not produce any side effects.  (*Id.* at 420).  Those treatment notes also state that Plaintiff was attending group therapy during those months.  (*Id.*).  The August and November 2005 treatment notes provide the same description of Plaintiff's depression, adding that Plaintiff was "calm and cheerful," and likewise state that Plaintiff's medication did not produce any side effects.  (*Id.* at 419).  However, those treatment notes state that Plaintiff was not attending group therapy during those months.  (*Id.* at 419-20).  Notably, the 2005 treatment notes suggest that Plaintiff's depression would worsen when he reflected on a past breakup.  (*Id.*).

Dr. Gorman's February and May 2006 treatment notes also provide the same description of Plaintiff's depression, including the observation that he was "calm and cheerful," and again

state that Plaintiff's medication did not produce any side effects. (*Id.* at 396). Those treatment notes, in addition, state that Plaintiff had intact cognitive functioning, and state that he was attending therapy at New Beginnings and the Bridgeway House.[2] (*Id.*). Plaintiff apparently preferred to attend therapy at New Beginnings, rather than at Trinitas Hospital, because he had a conflict with the therapy group at Trinitas Hospital. (*Id.*). The July 2006 treatment note states that Plaintiff was grieving over his breakup throughout June, and that he remained depressed and angry about his failed relationship. (*Id.* at 417). That said, at that time, Plaintiff was "getting better," and Dr. Gorman again described Plaintiff's depression as "mild," with no suicidal ideations or psychosis, and stated that Plaintiff had intact cognitive functioning. (*Id.*). Likewise, according to the July 2006 treatment note, Plaintiff was still attending therapy at New Beginnings and the Bridgeway House, and his medication did not produce any side effects. (*Id.*). The October 2006 treatment note describes Plaintiff as "calm and cheerful," once again, and states that Plaintiff had a neutral mood, with no depression, and that he had gotten over his failed relationship. (*Id.*). Additionally, that treatment note states that Plaintiff had intact cognitive functioning, was attending therapy at New Beginnings and the Bridgeway House, and that his medication did not produce any side effects. (*Id.*).

In February 2007, Plaintiff attended a face-to-face interview at a Social Security Administration Field Office. (*Id.* at 300-03). The interviewer described Plaintiff as "friendly and cooperative," and did not perceive that Plaintiff had any mental difficulties. (*Id.* at 302). Dr. Gorman's 2007 treatment notes—available for the months of February, May, August, and October—all describe Plaintiff as "calm and cheerful," and state that Plaintiff had intact cognitive functioning, and a neutral mood, with no depression. (*Id.* at 393-94). The 2007

---

[2] Plaintiff testified that the Bridgeway House provides a partial care program with counselors and psychiatrists. (R. at 94).

3

treatment notes also state that Plaintiff's medication did not produce any side effects, and that he attended the Bridgeway House, New Beginnings, and individual therapy sessions with Allison Britton, a licensed clinical social worker. (*Id.* at 386-94). Of note, the 2007 treatment notes state that Plaintiff was interested in working part-time. (*Id.* at 393-94). In November 2007, Plaintiff received a checkup at Trinitas Hospital. At that time, Plaintiff reported feeling anxious and depressed because of his relationship problems. (*Id.* at 512).

Dr. Gorman's February and May 2008 treatment notes similarly describe Plaintiff as "calm and cheerful," and state that he had a neutral mood, with no depression, and intact cognitive functioning. (*Id.* at 518). Those treatment notes also state that Plaintiff's medication did not produce any adverse effects, that he met with a social group, and that he attended therapy at New Beginnings and the Bridgeway House. (*Id.*). In July 2008, Plaintiff secured employment at a Wal-Mart. (*Id.* at 340).

2.   Sleep Apnea

Plaintiff has sleep apnea. (*Id.* at 523). To improve his sleep, Plaintiff uses a continuous positive airway pressure ("CPAP") machine and takes Ambien (Zolpidem Tartrate). (*Id.* at 339, 523). Dr. Gorman's January, April, and August 2005 treatment notes describe Plaintiff's sleep as "good," and state that he did not use a CPAP machine. (*Id.* at 419-20). The November 2005 treatment note describes Plaintiff's sleep as "fair," but states that Plaintiff could afford neither a sleep disorder study nor a new CPAP machine. (*Id.* at 419).

Dr. Gorman's February 2006 treatment note describes Plaintiff's sleep as "good," and states that he slept better on Ambien. (*Id.* at 396). However, that treatment note also states that Plaintiff needed a new CPAP machine, and that he wanted to arrange a sleep study. (*Id.*). The May 2006 treatment note states that Plaintiff was not sleeping well, and that he requested

4

Ambien. (*Id.*). As a result, Dr. Gorman prescribed him Ambien. (*Id.*). On July 18, 2006, Dr.

Gorman again described Plaintiff's sleep as "good," and noted that the Ambien helped Plaintiff

sleep. (*Id.* at 417). The following day, on July 19, 2006, a doctor at Trinitas Hospital's

Cognitive Behavioral Therapy Group interviewed Plaintiff to evaluate whether he suffered from

insomnia. (*See id.* at 405-409). At that time, Plaintiff stated that he slept for a total of seven

hours each night, sometimes napped for two to three hours during the day, snored while sleeping,

and woke up every hour during the night. (*Id.* at 405-07). The doctor that interviewed Plaintiff

subsequently prepared notes detailing Plaintiff's progress on July 27 and August 2, 2006. (*Id.* at

402-03). Those notes state that Plaintiff slept for a total of five to seven hours each night, and

that he suffered from daytime fatigue. (*Id.*). Dr. Gorman's October 2006 treatment note

describes Plaintiff's sleep as good, and states that he still wanted a sleep study and a CPAP

machine. (*Id.* at 417).

Dr. Gorman's 2007 and 2008 treatment notes universally describe Plaintiff's sleep as

"good." (*Id.* at 393-94, 518). However, the 2007 treatment notes state that Plaintiff still wanted

a sleep study and CPAP machine, but that he could afford neither. (*Id.* at 393-94). The 2008

treatment notes likewise state that Plaintiff wanted a sleep study, but make no mention of his

desire to purchase a CPAP machine. (*Id.* at 518).

      3.    <u>Obesity</u>

Plaintiff is obese. (*See id.* at 99). In May 2007, he weighed 258 pounds, but in spite of

his weight, Plaintiff exhibited full range of motion, 5/5 strength in his upper extremities, and

intact sensation at that time. (*See id.* at 379, 381). Similarly, an interviewer that met with

Plaintiff at the Social Security Administration Field Office during that month stated that he did

not perceive that Plaintiff had any difficulty performing physical activities. (*Id.* at 312-14). In

December 2007, Plaintiff stated in his function report form that he could walk for a half mile before he needed to stop and rest. (*Id.* at 327). On December 13, 2010, during the hearing before ALJ Krappa, Plaintiff testified that he weighed about 270 pounds. (*Id.* at 75, 99).

     B.    <u>Procedural History</u>

Plaintiff initially filed an application with the Social Security Administration for DIB and SSI on January 25, 2007. (*Id.* at 138). The Administration denied Plaintiff's application and subsequent request for reconsideration. (*Id.*). Thereafter, Plaintiff requested a hearing before an ALJ. (*Id.*). That hearing took place on August 3, 2009, before ALJ Leonard Olarsch in Newark, New Jersey. (*Id.*). ALJ Olarsch determined that Plaintiff was not disabled under the Social Security Act. (*Id.* at 144). Subsequently, Plaintiff sought Appeals Council review, and the Appeals Council ultimately remanded ALJ Olarsch's decision. (*Id.* at 146-49). ALJ Krappa handled Plaintiff's application on remand, and she likewise determined that Plaintiff was not disabled. (*Id.* at 12-25). Once again, Plaintiff sought Appeals Council review, but the Appeals Council denied Plaintiff's request on April 30, 2011, rendering ALJ Krappa's decision the final decision of the Commissioner. (*Id.* at 1, 7). Plaintiff appealed to this Court on May 24, 2013. (Compl. 2-3, ECF No. 1). This Court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g).

## II.    LEGAL STANDARD

     A.    <u>The Five-Step Process for Evaluating Whether a Claimant Has a Disability</u>

Under the Social Security Act, the Administration is authorized to pay DIB and SSI to "disabled" persons. 42 U.S.C. §§ 423(a), 1382(a). A person is "disabled" if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be

expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A person is unable to engage in substantial gainful activity when his physical or mental impairments are "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

Regulations promulgated under the Social Security Act establish a five-step process for determining whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a)(1), 416.920(a)(1). At step one, the ALJ assesses whether the claimant is currently performing substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If so, the claimant is not disabled and, thus, the process ends. *Id.* If not, the ALJ proceeds to step two and determines whether the claimant has a "severe" physical or mental impairment or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Absent such impairment, the claimant is not disabled. *Id.* Conversely, if the claimant has such impairment, the ALJ proceeds to step three. *Id.* At step three, the ALJ evaluates whether the claimant's severe impairment either meets or equals a listed impairment. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(ii). If so, the claimant is disabled. *Id.* Otherwise, the ALJ moves on to step four, which involves three sub-steps:

> (1) the ALJ must make specific findings of fact as to the claimant's residual functional capacity [("RFC")]; (2) the ALJ must make findings of the physical and mental demands of the claimant's past relevant work; and (3) the ALJ must compare the [RFC] to the past relevant work to determine whether claimant has the level of capability needed to perform the past relevant work.

*Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 120 (3d Cir. 2000) (citations omitted).

The claimant is not disabled if his RFC allows him to perform his past relevant work. 20 C.F.R.

§§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  However, if the claimant's RFC prevents him from doing so, the ALJ proceeds to the fifth and final step of the process.  *Id.*

The claimant bears the burden of proof for steps one through four.  *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007) (citing *Ramirez v. Barnhart*, 372 F.3d 546, 550 (3d Cir. 2004).  "At step five, the burden of proof shifts to the Social Security Administration to show that the claimant is capable of performing other jobs existing in significant numbers in the national economy, considering the claimant's age, education, work experience, and [RFC]."  *Id.* (citing *Ramirez*, 372 F.3d at 551).

B.    The Standard of Review: "Substantial Evidence"[3]

This Court must affirm an ALJ's decision if it is supported by substantial evidence.  *See* 42 U.S.C. §§ 405(g), 1383(c)(3).  Substantial evidence is "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  To determine whether an ALJ's decision is supported by substantial evidence, this Court must review the evidence in its totality.  *Daring v. Heckler*, 727 F.2d 64, 70 (3d Cir. 1984).  However, this Court may not "weigh the evidence or substitute its conclusions for those of the fact-finder."  *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992) (citation omitted).  Consequently, this Court may not set an ALJ's decision aside, "even if [it] would have decided the factual inquiry differently."  *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999) (citations omitted).

---

[3] Because the regulations governing supplemental security income—20 C.F.R. § 416.920—are identical to those covering disability insurance benefits—20 C.F.R. § 404.1520—this Court will consider case law developed under both regimes.  *Rutherford v. Barnhart*, 399 F.3d 546, 551 n. 1 (3d Cir. 2005) (citation omitted).

## III.    DISCUSSION

At step one, the ALJ found that Plaintiff "did not engage[ ] in substantial gainful activity … during the period at issue . . . ." (R. at 15). At step two, the ALJ determined that Plaintiff suffered from the following severe impairments: (1) an affective disorder; (2) sleep apnea; and (3) obesity. (*Id.* at 16). At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. (*Id.* at 16-17). At step four, the ALJ determined that Plaintiff had the RFC to perform low stress, unskilled and repetitive light work,[4] permitting three fifteen minute breaks during the workday, and requiring: (1) no use of ladders, ropes, or scaffolds; (2) only occasional use of ramps or stairs; (3) only occasional balancing, stooping, kneeling, crouching, and/or crawling; (4) only occasional contact with supervisors and co-workers; and (5) no contact with the general public. (*Id.* at 17). At step five, the ALJ determined that "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform . . . ." (*Id.* at 23). Thus, the ALJ concluded that Plaintiff was not disabled. (*Id.* at 24). Plaintiff contends that ALJ Krappa's decision should be reversed and remanded for a new hearing and decision because: (1) the analysis at step three is flawed; (2) the ALJ did not properly assess Plaintiff's credibility at step four; (3) the ALJ's decisional RFC is not based on substantial evidence; and (4) the hypothetical question posed to the Vocational Expert ("VE") at step five was insufficient. (Pl.'s Br. 10-35, ECF No. 10).

### A.    Whether the ALJ's Analysis at Step Three is Based on Substantial Evidence

An ALJ must "fully develop the record and explain [her] findings at step three, including an analysis of whether and why [each of claimant's] impairments, or those impairments combined, are or are not equivalent in severity to one of the listed impairments." *Burnett*, 220

---

[4] "Light work" refers to work that "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. §§ 404.1567(b), 416.967(b).

F.3d at 120.  Here, Plaintiff argues that ALJ Krappa's analysis at step three is deficient for three

reasons.  (Pl.'s Br. 12-19).  First, Plaintiff argues that the ALJ failed to properly consider

Plaintiff's obesity in combination with Plaintiff's other impairments.  (Pl.'s Br. 14-19).  Second,

Plaintiff argues more generally that the ALJ failed to properly consider Plaintiff's impairments in

combination with one another.  (*See* Pl.'s Br. 12).  Third, Plaintiff argues that the ALJ's

explanation as to why his affective disorder does not meet the listing for such disorders (12.04) is

deficient.  (*Id.* at 12-14).

> 1.  Whether the ALJ Properly Considered Plaintiff's Obesity in Combination
>      With His Affective Disorder and Sleep Apnea

At step three, the ALJ found that Plaintiff's obesity did not meet or medically equal a

listed impairment.  (R. at 17).  Plaintiff argues that, in finding so, the ALJ did not comply with

the Third Circuit's holding in *Diaz v. Comm'r of Soc. Sec.,* that "an ALJ must meaningfully

consider the effect of a claimant's obesity, individually and in combination with [his other]

impairments, on [his] workplace function at step three . . . ."  577 F.3d 500, 504 (3d Cir. 2009);

(Pl.'s Br. 17).  Relatedly, Plaintiff argues that the ALJ's step three obesity finding did not

comply with the Commissioner's instructions, set forth in Social Security Rulings 00-3p and 02-

1p, that an ALJ must consider a claimant's obesity in combination with his other impairments at

step three.[5]  (Pl. Br. 14-16).  The Court disagrees.

The ALJ began his step three consideration of Plaintiff's obesity by finding that Plaintiff

was indeed obese under applicable medical guidelines.  (R. at 17).  She then acknowledged that

under Social Security Ruling 02-1p, the combination of a claimant's obesity with his other

---

[5] Social Security Ruling 02-1p superseded Social Security Ruling 00-3p.  Social Security Ruling 02-1p provides that
an ALJ may find at step three that:
> [A] listing is met if there is an impairment that, in combination with obesity,
> meets the requirements of a listing.  For example, obesity may increase the
> severity of coexisting or related impairments to the extent that the combination
> of impairments meets the requirements of a listing.  This is especially true of
> muscoskeletal, respiratory, and cardiovascular impairments.

impairments can meet or medically equal a listing. (*Id.*). She subsequently explained why Plaintiff's obesity in combination with his other impairments failed to meet or medically equal a listing. (*Id.*). Specifically, she noted that during Plaintiff's alleged period of disability, he lived alone, reported only mild depression, attended a self-help group and casual outing club, and was repeatedly described as "calm and cheerful" by Dr. Gorman. (*Id.*). She further noted that in February and May 2007, interviewers at a Social Security Administration Field Office observed that Plaintiff had no mental or physical difficulties. (*Id.*). She also noted that when Plaintiff visited Trinitas Hospital in May 2007, his chief complaint was right shoulder pain. (*Id.*). Finally, the ALJ concluded that "during the period of issue, even when obesity is considered in combination with [Plaintiff's] other impairments, [Plaintiff] did not meet or equal any of the listings . . . ." (*Id.*).

The ALJ's step three consideration of Plaintiff's obesity here stands in stark contrast to the ALJ's decision in *Diaz*, wherein "[t]he ALJ acknowledged [that the claimant's obesity was a severe impairment] at step two, but failed to consider its impact, in combination with her other impairments, at step three, as required." 577 F.3d at 503. Consequently, the Court concludes that the ALJ's step three consideration of Plaintiff's obesity complies with *Diaz* and Social Security Rulings 00-3p and 02-1p. The Court's conclusion is buttressed by Plaintiff's failure to point the Court to any evidence establishing that the combination of his obesity and his other impairments meets or medically equals a listing. *See Williams v. Barnhart*, 87 F. App'x 240, 243 (3d Cir. 2004) ("[Plaintiff] argues that the ALJ should have given greater consideration to the 'interrelationship' among her impairments, but she does not explain how this consideration would have differed from the one provided, and we do not understand how it should have."); *see also Neff v. Astrue*, 875 F. Supp. 2d 411, 423 (D. Del. 2013) (holding that remand was

unwarranted where "[Plaintiff] fail[ed] to point to any evidence in the record in support of the finding that obesity worsened her symptoms . . . . The simple fact that [Plaintiff] became obese in 2008 does not automatically justify the conclusion that it significantly worsened her symptoms.").

2.    Whether the ALJ Properly Considered Plaintiff's Impairments in Combination With One Another

Plaintiff more generally argues that the ALJ failed to consider Plaintiff's impairments in combination with one another at step three. (Pl.'s Br. 12).  An ALJ fulfills her duty to consider a claimant's impairments in combination with one another if the ALJ explicitly indicates that she has done so, and there is "no reason to not believe h[er]." *Morrison ex. rel. Morrison v. Comm'r of Soc. Sec.,* 268 F. App'x 186, 189 (3d Cir. 2008).

Here, at step three, the ALJ unequivocally stated that Plaintiff "did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments . . . ." (R. at 16).  The ALJ then explained why Plaintiff's impairments did not meet or medically equal the listings for either affective disorders (12.04) or sleep-related breathing disorders (3.10).  (*Id*. at 17).  In light of that explanation and the ALJ's thorough discussion of the record throughout her opinion, the Court determines that the ALJ adequately considered the combined effect of each of Plaintiff's impairments.  *See Jones v. Barnhart,* 364 F.3d 501, 505 (3d Cir. 2004) (holding that the ALJ's step three determination was adequate because the ALJ's decision, "read as a whole," illustrated that the ALJ considered the appropriate factors). Moreover, the Court notes that Plaintiff has not "point[ed] to any medical evidence ignored by the ALJ that would show that [Plaintiff's] impairments medically equaled one of the listings." *See Cosby v. Comm'r of Soc. Sec.,* 231 F. App'x 140, 146 (3d Cir. 2007) (holding that this

12

shortcoming is significant).  Therefore, the Court concludes that the ALJ properly considered the combination of Plaintiff's impairments with one another at step three.

      3.    <u>Whether the ALJ's Explanation as to Why Plaintiff's Affective Disorder Does Not Meet the Listing For Such Disorders (12.04) is Based on Substantial Evidence</u>

A claimant's affective disorder meets or medically equals listing 12.04 when it either satisfies both the paragraph A[6] and paragraph B criteria, or satisfies the paragraph C criteria of that listing.  20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.04.  Here, the ALJ found that Plaintiff's affective disorder did not meet listing 12.04, focusing on whether said disorder satisfied the paragraph B criteria.  (R. at 16-17).  Plaintiff argues that the ALJ's finding is not based on substantial evidence because she did not explain why his affective disorder failed to meet the paragraph A criteria.[7]  (Pl.'s Br. 12-14).

To satisfy the Paragraph B criteria of listing 12.04, a claimant must demonstrate that his affective disorder results in at least two of the following:

> 1. Marked restriction of activities of daily living; or
> 2. Marked difficulties in maintaining social functioning; or
> 3. Marked difficulties in maintaining concentration, persistence, or pace; or
> 4. Repeated episodes of decompensation, each of extended duration . . . .

20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.04.  A limitation is "marked" when it is "more than moderate but less than extreme."  *Id.*  Here, the ALJ found that Plaintiff's affective disorder did not result in marked limitations in any of the first three categories, and that Plaintiff did not have any repeated episodes of decompensation.  (R. at 16).

---

[6] To satisfy the paragraph A criteria, a claimant must, in essence, medically document the persistence of depressive, manic, or bipolar syndrome.  20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.04.

[7] Plaintiff does not argue that the ALJ's finding concerning listing 12.04 is deficient because she did not discuss the paragraph C criteria.  Accordingly, the Court does not discuss the paragraph C criteria.

With regard to Plaintiff's activities of daily living, the ALJ concluded that Plaintiff's depression resulted in only mild restrictions thereto. (*Id.*). In support of her conclusion, the ALJ noted that Dr. Gorman's treatment notes describe Plaintiff as calm and cheerful, with mild or no depression. (*Id.*). She also noted that Plaintiff had his own apartment, and returned to work at the end of his alleged period of disability. (*Id.*). Furthermore, she noted that Plaintiff testified that he still lived alone at the time of the hearing. (*Id.*). Thus, the ALJ offered substantial evidence in support of her conclusion that Plaintiff had only a mild restriction in his activities of daily living. Of note, Plaintiff has not cited to any evidence in the record suggesting otherwise. *See Lippincott v. Comm'r of Soc. Sec.*, No. 12-7175, 2013 WL 5973504 at *12 (D.N.J. Nov. 8, 2013) (finding that substantial evidence supported the ALJ's determination that plaintiff had only a moderate restriction in activities of daily living where the plaintiff failed to identify evidence contradicting that determination).

The ALJ next concluded that Plaintiff had only a mild restriction in maintaining social functioning. (R. at 16). In support of her conclusion, the ALJ noted that Plaintiff reported that he had no difficulty maintaining relationships. (*Id.*). She also noted that Dr. Gorman often described Plaintiff as calm and cheerful, and that Plaintiff reported that he had a small social circle, consisting primarily of a female friend. (*Id.*). Hence, the ALJ provided substantial evidence in support of her conclusion that Plaintiff had only a mild restriction in maintaining social functioning. *See e.g. Garcia v. Astrue*, No. 11-113, 2012 WL 2018240 at *8 (W.D. Pa. June 5, 2012) (finding that substantial evidence supported the ALJ's finding that the plaintiff had only moderate difficulties in social functioning where "although there was some indication of social isolation, [the p]laintiff was able to maintain satisfactory relationships with his brother and

others, and . . . health care professionals . . . consistently revealed the [p]laintiff to be friendly and cooperative . . . .").

The ALJ further concluded that Plaintiff had only moderate difficulties in maintaining concentration, persistence or pace. (R. at 16). In support of her conclusion, the ALJ noted that Plaintiff was able to maintain the concentration, persistence and pace necessary to manage both his household and financial affairs. (*Id.*). Lastly, the ALJ concluded that there was no evidence in the record that Plaintiff experienced any episodes of decompensation. (*Id.*). As a result, the ALJ determined that Plaintiff did not satisfy the requirements of listing 12.04 since he did not meet the paragraph B criteria. (*See id.*). In doing so, the ALJ offered substantial evidence in support of her conclusion.[8]  In any event, Plaintiff, who bears the bears the burden of proof at step three, has failed to articulate why her impairments meet listing 12.04. *See Meyler v. Comm'r of Soc. Sec.*, 283 F. App'x 884, 889 (3d Cir. 2007) (noting that the plaintiff bears the burden of proving at step three that his impairments meet or medically equal a listing).

> B.    Whether the ALJ Properly Assessed Plaintiff's Credibility at Step Four

In assessing Plaintiff's credibility at step four, the ALJ found that Plaintiff's "allegations of disability during the period at issue are not supported by the objective evidence in the record and, therefore, cannot be considered entirely credible." (R. at 21). Plaintiff argues that the ALJ's credibility assessment falls below the standard set forth in Social Security Ruling 96-7p. (Pl.'s Br. 19-24). Defendant disagrees, arguing that "the ALJ applied the proper regulatory standard . . . ." (Def.'s Br. 12, ECF No. 12).

---

[8] Plaintiff also argues that the ALJ's analysis of listing 12.04 is deficient because the ALJ did not consider the paragraph A criteria. However, since the ALJ provided substantial evidence in support of her determination that Plaintiff failed to meet the paragraph B criteria, she did not need to consider the paragraph A criteria. *See Gantt v. Comm'r of Soc. Sec.*, 205 F. App'x 65, 66 (3d Cir. 2006) (declining to address the paragraph A criteria because the plaintiff had failed to meet the paragraph B criteria).

Social Security Ruling 96-7p provides that "[t]he reasons for [an ALJ's] credibility finding must be grounded in the evidence and articulated in the . . . decision." Thus, when the ALJ rejects a claimant's testimony concerning his subjective symptoms, the ALJ must explain her reasons for doing so. *See Burnett*, 220 F.3d at 122 (internal citations omitted) ("[T]he ALJ must also consider and weigh all of the non-medical evidence before [her]. Although allegations of pain and other subjective symptoms must be consistent with objective medical evidence, the ALJ must still explain why [she] is rejecting the testimony."). The ALJ's explanations should consider factors relevant to the claimant's symptoms, including: (1) his daily activities; (2) the duration, frequency, and intensity of his symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effect of any medication he takes or has taken to alleviate his symptoms; (5) treatment, other than medication, he receives or has received to relieve his symptoms; (6) any measure he uses or has used to relieve his symptoms; and (7) other factors concerning his functional limitations and restrictions due to his symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). Notably, a claimant's "[s]ubjective complaints cannot alone establish disability." *Gantt*, 205 F. App'x at 67 (citing 20 C.F.R. § 404.1529(a)).

Here, at the hearing before the ALJ, Plaintiff testified that the main reason that he could not work was because he was unable to concentrate or focus for too long. (R. at 86, 89-90). He also testified that on some days he had very painful and suicidal thoughts, and that his medication made him dizzy, lightheaded, and unable to focus or concentrate. (*Id.* at 86, 115). The ALJ specifically mentioned this testimony, and found that it was not entirely credible based on the evidence in the record. (*See id.* at 17-23). The Court summarizes the ALJ's reasons for finding so.

16

With regard to Plaintiff's daily activities at the time of his alleged disability, the ALJ noted that Plaintiff stated in his December 2007 function report that he lived alone, shopped for food three times a week, cleaned, did his laundry, paid his bills, handled money, and went outside quite often. (*Id.* at 21, 322-27). With regard to the duration, frequency, and intensity of Plaintiff's affective disorder, the ALJ noted that Dr. Gorman's treatment notes from October 2001 to July 2009 often describe Plaintiff as calm and cheerful, with mild or no depression. (*Id.* at 21, 393-96, 417, 419-20, 518). Moreover, the ALJ noted that although Plaintiff suffered from sleep apnea, Dr. Gorman's treatment notes from the period of alleged disability generally state that Plaintiff reported "good" sleep even when he did not use a CPAP machine. (*Id.* at 19-21, 393-94, 396, 417, 419-20, 518). With regard to the factors that precipitated and aggravated Plaintiff's affective disorder, the ALJ noted that Dr. Gorman's treatment notes point to Plaintiff's relationship and self-esteem issues as being the key factors. (*Id.* at 21, 417, 419-20). With regard to the side effects of Plaintiff's medication, the ALJ noted that contrary to Plaintiff's testimony at the hearing, Dr. Gorman's treatment notes from the period of alleged disability state that Plaintiff denied any side effects. (*Id.* at 22, 393-94, 396, 417, 419-20). Lastly, the ALJ noted that Plaintiff attended a partial care program and used anti-depressants to relieve the symptoms associated with his affective disorder. (*Id.* at 19, 21).

By providing the aforementioned reasons, the ALJ offered substantial evidence in support of her finding that Plaintiff's subjective complaints are not entirely credible. *See generally Gantt*, 205 F. App'x at 67 (internal quotation marks and citations omitted) ("[A]n ALJ has discretion to evaluate the credibility of a claimant and arrive at an independent judgment in light of medical findings and other evidence . . . ."); *see also Woods v. Astrue*, No. 07-252, 2009 WL 1177086 at *7 (D. Del. Apr. 30, 2009) (finding that the ALJ's analysis of the Plaintiff's

17

credibility was sufficient where the ALJ expressly considered the objective medical evidence in the record).

C.     Whether the ALJ's Decisional RFC is Based on Substantial Evidence

At step four, the ALJ determined that Plaintiff had the RFC to perform:

> [T]he exertional demands of light work as defined under the Regulations: specifically, he was able to: lift/carry 20 pounds occasionally and 10 pounds frequently; stand/walk for 6 hours in an 8-hour day; sit for 6 hours in an 8-hour day; and perform unlimited pushing and/or pulling within the weight restrictions given. Regarding the postural and environmental demands of work, I find that [Plaintiff] was able to perform jobs: that require no use of ladders, ropes, or scaffolds; that require only occasional use of ramps or stairs; and that require occasional balancing, stooping, kneeling, crouching, and/or crawling. Finally, regarding the mental demands of work, I find that [Plaintiff] was able to perform jobs: that are unskilled and repetitive; that permit at least 3 breaks during the work day—each of at least 15 minutes duration; that are low stress[9]; and that require only occasional contact with supervisors and co-workers, and no contact with the general public.

(R. at 17). Plaintiff contends that the ALJ's RFC is not based on substantial evidence for two reasons. (See Pl.'s Br. 27-28). First, Plaintiff contends that the ALJ did not explain how, in spite of his obesity, he is able to frequently lift/carry ten pounds, and occasionally lift/carry twenty pounds, balance, stoop, kneel, crouch, and/or crawl throughout the workday. (See id. at 27). Second, Plaintiff contends that the ALJ did not explain how three fifteen breaks each workday accommodate his moderate difficulties in maintaining concentration, persistence, or pace. (See id. at 28). The Court addresses each of Plaintiff's contentions in turn.

The Court concludes that Plaintiff's first contention—that the ALJ's RFC does not account for the limitations imposed by his obesity—is unavailing. In making her RFC

---

[9] The ALJ's decision defines "low stress jobs" as ones "that require only an occasional change in the work setting during the work day, only an occasional change in decision-making required during the work day, and, if production based, production is monitored at the end of the day rather than consistently throughout it." (R. at 17).

determination, the ALJ must consider all pertinent and probative evidence. *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 203-04 (3d Cir. 2008) (citing *Burnett*, 220 F.3d at 121 and *Cotter v. Harris*, 642 F.2d 700, 705-07 (3d Cir. 1981)).  Here, the ALJ considered the following pertinent and probative evidence, which suggests that Plaintiff's obesity did not impose any further limitations on Plaintiff's RFC other than those limitations that the ALJ identified.  First, the ALJ considered that Plaintiff stated in a December 2007 function report that he was able to walk a half a mile without rest.  (R. at 21).  Second, the ALJ considered that Plaintiff stated in the same report that he lived alone, and could cook, clean, and shop.  (*Id.* at 22).  Third, the ALJ considered that although Plaintiff was obese, his depression was well controlled with medication and treatment.  (*Id.*).  Lastly, the ALJ considered that even though Plaintiff was obese and suffered from sleep apnea during the period of his alleged disability, he still reported "good sleep."  (*Id*).  Ultimately, after considering the aforementioned evidence, the ALJ found that Plaintiff had the RFC to perform light work with some postural and environmental limitations. (*Id.* at 22-23).  These limitations properly account for Plaintiff's obesity.  *See e.g. Pelech v. Comm'r of Soc. Sec.*, No. 10-1024, 2011 WL 13873 at *7 (D.N.J. Jan. 4, 2011) (Linares, J.) (holding that there was substantial evidence that the ALJ's RFC finding considered the claimant's obesity since "[he] limited [c]laimant to jobs that required no climbing of ladders and no frequent crouching, stooping, or crawling.").  In any event, Plaintiff has not specified how his obesity further limits his ability to work.  *See Rutherford,* 399 F.3d at 553 (holding that where the claimant did not specify how her obesity would affect the ALJ's five-step analysis "beyond an assertion that her weight makes it more difficult for her to stand, walk and manipulate her hands and fingers[, t]hat generalized response [was] not enough to require a remand . . . .").

The Court likewise concludes that Plaintiff's second contention—that the ALJ's RFC does not account for his moderate difficulties in maintaining concentration, persistence, or pace—is unavailing. Plaintiff's moderate difficulties with regard to concentration, persistence, or pace are reflected by the ALJ's finding that Plaintiff is limited to unskilled, repetitive, and low stress work that requires no contact with the general public, and permits at least three breaks during the workday. *See Menkes v. Astrue,* 262 F. App'x. 410, 412 (3d Cir. 2008) (restriction to simple, routine tasks accounted for the plaintiff's moderate limitations in concentration, persistence, and pace); *see also Seabon v. Comm'r of Soc. Sec.,* No. 10-2268, 2011 WL 3425508 at *9 (D.N.J. Aug. 4, 2011) (holding that similar limitations addressed the plaintiff's moderate difficulties with regard to concentration, persistence, or pace since "they reduce[d] distraction and allow[ed] plaintiff to keep pace with simple work.").

D.     Whether the ALJ's Hypothetical Question to the VE was Deficient

Plaintiff argues that the ALJ's hypothetical question to the VE at step five was deficient because it did not adequately convey Plaintiff's moderate difficulties in maintaining social functioning and concentration, persistence, or pace.[10] (Pl.'s Br. 31). The Court finds Plaintiff's argument unpersuasive.

---

[10] As is relevant here, the ALJ posed the following hypothetical to the VE:

> [L]et's assume someone of [Plaintiff's] age, educational background and work history. And assume the person can perform light work, carry 20 pounds occasionally, 10 pounds frequently. Stand or walk six hours. Sit for six hours in an eight-hour workday. Perform unlimited pushing and pulling within the weight restriction I've given you. Cannot use ladders, ropes or scaffolds, but can occasionally use ramps or stairs. Can only occasionally balance, stoop, kneel, crouch or crawl. Cannot be exposed to unprotected heights, hazards or dangerous machinery. Can only perform work that's unskilled and repetitive, that's low stress. That is, the jobs require only an occasional change of work setting during the workday, only an occasional change in decision making required during the workday. And if production-based, production is monitored at the end of the day as opposed to consistently throughout it. And this person can have no contact with the general public, but can occasionally have contact

An ALJ's hypothetical question to a VE "must reflect all of a claimant's impairments that are supported by the record; otherwise the question is deficient and the expert's answer to it cannot be considered substantial evidence." *Chrupcala v. Heckler,* 829 F.2d 1269, 1276 (3d Cir. 1987) (citations omitted). "[G]reat specificity is required when an ALJ incorporates a claimant's mental or physical limitations into a hypothetical." *Ramirez,* 372 F.3d at 554-55 (citing *Burns v. Barnhart,* 312 F.3d 113, 122 (3d Cir. 2002)). That said, there are limits to the required level of specificity, and the ALJ's hypothetical question to the VE in this case is sufficiently specific. *See Menkes,* 262 F. App'x at 412-13 (finding no error in the ALJ's hypothetical question limiting claimant to simple, unskilled, and routine tasks).

By restricting Plaintiff to low stress work settings that require no contact with the general public and occasional contact with supervisors or coworkers, the ALJ adequately conveyed Plaintiff's moderate difficulties in maintaining social functioning. *See Palisay v. Comm'r of Soc. Sec.,* No. 11-4857, 2012 WL 3201428 at *17 (D.N.J. Aug. 2, 2012) ("[A]s determined by the ALJ, the restriction to settings with low stress and little to n o [sic] public contact encompasses [p]laintiff's moderate limitations in social functioning and concentration, persistence, and pace."). Likewise, by restricting Plaintiff to unskilled, repetitive and low stress jobs that require no contact with the general public the ALJ adequately conveyed Plaintiff's moderate difficulties in maintaining concentration, persistence, or pace. *See e.g. McDonald v. Astrue,* 293 F. App'x 941, 946-47 (3d Cir. 2008) (holding that the ALJ's hypothetical question limiting the claimant to "simple, routine tasks" adequately reflected the claimant's "moderate limitations with [respect to] his ability to maintain concentration, persistence, and pace); *compare Ramirez,* 372 F.3d at

---

with supervisors or coworkers. Given that RFC, would there—could this hypothetical person perform any of the work that [Plaintiff] has performed?

(R. at 117-18).

554 (holding that the ALJ's hypothetical question limiting the claimant to "simple one to two step tasks" was inadequate because it did not take into account that the claimant "often suffered from deficiencies in concentration, persistence, or pace."). Accordingly, the Court holds that the ALJ's hypothetical question to the VE adequately reflected all of Plaintiff's impairments.

## IV.    CONCLUSION

The Court has reviewed the entire record and, for the reasons discussed above, finds that the ALJ's determination that Plaintiff was not disabled was supported by substantial evidence. Accordingly, the Court affirms the ALJ's decision. An appropriate Order accompanies this Opinion.

JOSE L. LINARES
U.S. DISTRICT JUDGE

DATED: March ____, 2014